546-07MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ARMADA PACIFIC BULK CARRIERS (SINGAPORE) PTE LTD
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ARMADA PACIFIC BULK CARRIERS (SINGAPORE) PTE LTD,

                              Plaintiff,

  -against-

LUYANG (HK) GROUP LIMITED,

                              Defendant.
------------------------------------------------------------------------x

07 CIV 9707 (JSR)

**AMENDED
VERIFIED COMPLAINT**

Plaintiff, ARMADA PACIFIC BULK CARRIERS (SINGAPORE) PTE LTD (hereinafter "ARMADA"), as and for its Amended Verified Complaint against Defendant LUYANG (HK) GROUP LIMITED (hereinafter "LUYANG"), alleges upon information and belief as follows:

### JURISDICTION AND PARTIES

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

NYDOCS1/293851.1

2. At all times material hereto, Plaintiff ARMADA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 6 Battery Road, Unit No. #17-05/06, Singapore 049909.

3. At all times relevant hereto, Defendant LUYANG was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Room 2104, 21/f., Shanghai Industrial Investment Bldg., 48-62 Hennessy Road, Wanchai, Hong Kong.

## THE LUYANG CHARTER

4. Plaintiff ARMADA, as charterer, entered into a maritime contract of charter party dated September 13, 2007, with Defendant LUYANG, as disponent owner,[1] for the charter of the M/V ALWADI ALGADEED to perform one or two laden legs (at ARMADA's option) over a period of about 35/60 days (plus/minus 10 days at ARMADA's option) for the carriage of bulk cargo of grain, coal and/or ore (the "Luyang Charter").

5. Lines 41 through 43 of the Luyang Charter specifically required Defendant LUYANG to deliver the vessel to Plaintiff ARMADA in a condition ready to receive any permissible cargo with its holds thoroughly clean, dry, tight, staunch, strong and in every way fitted for any permitted cargo service.

6. LUYANG warranted, at Clause 49 of the Luyang Charter, that throughout the duration of the charter, the vessel's equipment would comply with regulations and/or requirements in effect at all ports of call, canals and countries in which the vessel will be employed, and provided further that ARMADA may suspend hire for time lost due to any failure to so comply, and any extra expenses incurred were to be for LUYANG's account.

---

[1] LUYANG was not the actual owner of the vessel, but instead had chartered it from another entity.

NYDOCS1/293851.1                                2

7. Clause 67 of the Luyang Charter required LUYANG to maintain the condition of the vessel, and provided that the failure to do so would result in the loss to LUYANG of hire, and any extra expenses, including, but not limited to, fuel and costs would be for LUYANG's account.

8. ARMADA had the right, pursuant to Clause 39, to cancel the charter if for any reason the vessel was put off-hire, or was reasonably estimated to be put off-hire, for 30 days.

## LUYANG BREACHES THE CONTRACT

9. ARMADA satisfied all of its obligations under the Luyang Charter, including making an advance payment to LUYANG in the amount of $795,649.38 to account for hire[2], bunkers[3] and representation costs[4].

10. The Luyang Charter contemplated that ARMADA might sub-charter the vessel, and ARMADA sub-chartered the M/V ALWADI ALGADEED to non-party Grandview Shipping Pty Ltd ("Grandview") for the carriage of alumina bulk cargo from Kwinana, Australia to Lianyungang/Qingdao, China ("Grandview Sub-charter"). Bulk alumina was a permitted cargo under the Luyang Charter.

11. On September 23, 2007, LUYANG delivered the vessel to ARMADA at Makassar, Indonesia, and ARMADA thereafter ordered the vessel to proceed to Australia to load the alumina cargo pursuant to the Grandview Sub-charter.

---

[2] Hire was payable by ARMADA under the Luyang Charter every 15 days in advance at a rate of $35,750 per day but, ARMADA had the right to withhold from hire an amount to account for off-hire periods and any fines, debts and/or damages, including certain expenses that ARMADA estimated to be on LUYANG's account, under the terms of the Luyang Charter.

[3] Bunkers were payable by ARMADA under the Luyang Charter at a rate of $380 per metric ton of IFO and $680 per metric ton of MDO.

[4] Representation costs were payable by ARMADA under the Luyang Charter at a rate of $1,500 every 30 days to account for various services and incidental costs such as cigarettes, drinks and petty expenses incurred by the Master/Officers of the vessel on ARMADA's behalf.

12. Upon arrival at Australia on September 28, 2007, the vessel was inspected by the Australian Maritime Safety Authority ("AMSA") for compliance with the Navigation Act of 1912 and the Australian Maritime Safety Authority Act of 1990.

13. As a result of the inspection, AMSA detained the vessel as unseaworthy and/or substandard based on its discovery of multiple deficiencies.

14. The AMSA documented 15 separate detainable deficiencies and the vessel was detained on the basis of at least 9 of these deficiencies. The majority of the deficiencies for which the vessel was detained involved severe corrosion that was a danger to the vessel and her crew and any cargo, and was evidence of a deplorable lack of care and upkeep of the ship.

15. On the same day of the detention, surveyors, Alma Marine Cargo & Ship Surveyors and Consultants, performed an on-board survey of the vessel and its cargo holds for the joint account of LUYANG and ARMADA, and concluded that the cargo holds were unfit to perform the intended voyage.

16. Two additional surveys were performed on the cargo holds between September 28, 2007 and October 1, 2007, both of which also concluded that the cargo holds were unfit to perform the intended voyage.

17. In breach of the Luyang Charter, Defendant LUYANG had failed to deliver a vessel fit to carry cargo fairly contemplated under the contract.

18. Also, in breach of the Luyang Charter, Defendant delivered a vessel with cargo holds that failed to comply with regulations and/or requirements in effect at Australia, which was within the vessel's authorized trading limits.

19. In further breach of the Luyang Charter, Defendant LUYANG failed to maintain the vessel during the charter period.

20. On October 2, 2007, LUYANG notified ARMADA that the vessel would be put out of service until some point during the first half of November as the vessel required major repairs.

21. Accordingly, ARMADA exercised its right under Clause 39 of the Luyang Charter to cancel the charter due to the vessel being put off-hire for a reasonably estimated period lasting at least 30 days.

22. LUYANG was in repudiatory breach of the Luyang Charter because the vessel was unavailable *ab initio* due to deficiencies which were LUYANG's responsibility for a substantial period of the charter.

23. LUYANG was in anticipatory breach of the Luyang Charter in that LUYANG had evinced an intention not to perform in an essential respect.

## DAMAGES FLOWING FROM LUYANG'S BREACH

A.   UNREFUNDED ADVANCE PAYMENT

26. On October 8, 2007, LUYANG refunded to ARMADA a portion of the $795,649.38 paid in advance by ARMADA to account for hire, bunkers and representation costs under the Luyang Charter.

27. LUYANG retained and has refused to refund, though, the sum of $195,428.38 for the period of hire, bunkers and representation costs incurred between September 23, 2007 (the date of delivery of the vessel) and September 28, 2007 (the date the vessel was detained as unseaworthy by the Australian authorities). These funds should also be repaid to ARMADA on the basis that the vessel was unseaworthy and LUYANG was in breach of the Luyang Charter *ab initio*.

B.  LOSSES ON THE FIRST LEG

29. Due to the breach by LUYANG of the Luyang Charter, ARMADA was forced to charter a replacement vessel in order to satisfy its obligations under the Grandview Sub-charter party.

30. ARMADA, in order to mitigate damages and satisfy its obligations to Grandview, entered into a charter party with Mitsui O.S.K. Lines Ltd. ("Mitsui") dated October 4, 2007, for charter of the M/V SEA HARMONY ("Mitsui Charter").

31. Hire, under the Mitsui Charter, was payable in advance at a rate of $39,000 per day.

32. Bunkers, under the Mitsui Charter, were payable in advance at a rate of $420 per metric ton of IFO and $600 per metric ton of MDO.

33. Due to the change in carrying vessels on the Grandview Sub-charter, ARMADA was required to procure additional cargo insurance at a cost of $2600, which was in addition to the insurance costs ARMADA had previously incurred to cover the contemplated (but terminated) voyage on the M/V ALWADI ALGADEED.

34. ARMADA paid a sum of $1,128,922 to Mitsui for hire, bunkers, and other costs in connection with the Mitsui Charter for the voyage on the M/V SEA HARMONY.

35. Freight was paid to ARMADA by Grandview in the amount of $947,625 for the shipment of cargo under the Grandview Sub-charter.

36. Had LUYANG not breached Luyang Charter, which delayed ARMADA's departure from the load port at Australia, ARMADA would have arrived at the scheduled discharge port before a storm entered the area. Because LUYANG had breached of the Luyang Charter, ARMADA arrived at the scheduled discharge port during a storm, which caused delays generating costs in the amount of $179,033.

37. ARMADA's costs in connection with the substituted voyage carrying the Grandview cargo on the M/V SEA HARMONY amounted to: $1,128,922 (hire/bunkers/costs) + $179,033 (weather delays) + $2600 (insurance) – $947,625 (net freight) = $362,930.

38. Had LUYANG not breached the Luyang Charter, ARMADA's costs to perform the same voyage on the M/V ALWALDI ALGADEED as originally contemplated under the Luyang Charter would have amounted to: $950,555 (hire/bunkers/costs) + $10,000 (insurance) – $947,625 (net freight) = $12,930.

39. Accordingly, the carriage of the Grandview cargo on the M/V SEA HARMONY cost ARMANDA an additional $362,930 (cost of substituted voyage) – $12,930 (cost of originally contemplated voyage) = $350,000 more than it would have cost on the M/V ALWALDI ALGADEED.

C.   LOSSES ON THE SECOND LEG

28. Prior to the termination of the Luyang Charter, and before ARMADA learned of the unseaworthy condition of the vessel, ARMADA exercised its option under the Luyang Charter to employ the M/V ALWADI ALGADEED on a second laden leg, which would have commenced upon the vessel's arrival at China.

29. Had LUYANG not breached the contract by providing an unseaworthy vessel, the first laden leg of the intended voyage on the M/V ALWADI ALGADEED from Australia to China under the Luyang Charter would have arrived at China on or about October 16, 2007.

30. The rate of hire per day at China at that time averaged $5,000 more than the rate of hire ARMADA was paying under the Luyang Charter.

31. The second leg would have kept the vessel in ARMADA's service for another 47 days under the Luyang Charter.

40.   Had LUYANG not breached the contract by providing an unseaworthy vessel, ARMADA would have sub-chartered the vessel at China for 30 of the 47 days remaining on the Luyang Charter, which would have amounted to a profit of $5,000/day x 30 days = $150,000.

D.   SUMMARY OF DAMAGES

41.   A summary of the damages flowing from LUYANG's breach of the Luyang Charter is as follows:

   a.   $195,428.38 for hire, bunkers and representation costs paid, but still not refunded, in connection with the M/V ALWALDI ALGADEED;

   b.   $350,000 for damages incurred in performing the Grandview Sub-charter on a substituted vessel, the M/V SEA HARMONY; and

   c.   $150,000 for lost profits in connection with the contemplated second laden leg on board the M/V ALWALDI ALGADEED.

42.   In all, Defendant LUYANG is responsible for the sum of $695,428.38, no part of which has been paid, though duly demanded.

## ARBITRATION

43.   The Luyang Charter specifically provides for the resolution of disputes by arbitration at London, England, with English law to apply. ARMADA specifically reserves its right to arbitrate the merits of its dispute with LUYANG pursuant to the terms of the charter party. Arbitration has been commenced.

44.   This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for ARMADA's claims made or to be made in arbitration in London, England under English law, as agreed by the parties.

45.   As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

46. Plaintiff estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $100,000. Interest anticipated to be awarded is estimated to be $148,409.69 (calculated at the rate of 6.5% per annum compounded quarterly for a period of 3 years, the estimated time for completion of the proceedings in London).

47. In all, the claim for which ARMADA sues in this action, as near as presently may be estimated, totals **$943,838.07**, no part of which has been paid by LUYANG. ARMADA specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure ARMADA.

## PRAYER FOR RULE B RELIEF

48. Upon information and belief, and after investigation, Defendant LUYANG cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to or being transferred from or for the benefit of Defendant LUYANG (HK) GROUP LIMITED (collectively hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

**WHEREFORE**, Plaintiff ARMADA PACIFIC BULK CARRIERS (SINGAPORE) PTE LTD prays:

  a.  That process in due form of law according to the practice of this Court may issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $695,428.38 plus interest, costs and attorneys fees;

  b.  That since Defendant cannot be found within this District pursuant to Supplemental Rule B, that all tangible or intangible property of Defendant, up to and including the sum of **$943,838.07**, be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to or being transferred from or for the benefit of Defendant at, being transmitted through, or within the

possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

d.  That this Court grant such other, further and different relief as may be deemed just and proper in the premises.

Dated: New York, New York
December 12, 2007

        FREEHILL HOGAN & MAHAR, LLP
        Attorneys for Plaintiff
        ARMADA PACIFIC BULK CARRIERS (SINGAPORE) PTE LTD

By: _____
     Michael E. Unger (MU 0045)
     80 Pine Street
     New York, NY  10005
     (212) 425-1900
     (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
MICHAEL E. UNGER

Sworn to before me this
12th day of December 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

NYDOCS1/293851.1                              12